## 9321

### ATLANTIC COAST LINE R. CO. v. DAWES.

#### (85 S. E. 286.)

1. RAILROADS—LOCATION—RIGHT OF WAY.—Although a railroad charter allows a given number of feet on either side of the track, no presumption of ownership of that number of feet arises as against land inclosed within the yard, dwelling house, garden, or graveyard of a citizen, but the burden is on the railroad to show that the then owner of such land consented to the use by the road of his land.

2. RAILROADS — LOCATION — RIGHT OF WAY — LIMITATIONS.—Under the statute excepting the yard, garden, dwelling house, and graveyard of a citizen from acquisition by a railroad for a right of way, in the absence of consent, the railroad cannot acquire the land by presumptive consent from lapse of time, but the owner need not act to preserve his right until adverse title is asserted by the railroad.

3. RAILROADS—LOCATION—RIGHT OF WAY—CONTRACTS.—Where a railroad claimed a right of way through portions of land of a citizen excepted by statute from acquisition by the road in the absence of his consent, the burden of proving the contract of consent or its absence is on the railroad company, since the contract would be in its possession, and it could not, by failing to show the contract, acquire greater rights than the contract provided.

4. EVIDENCE—BEST 'AND SECONDARY EVIDENCE—PLATS.—It is largely within the discretion of the Court to determine the sufficiency of evidence that a plat was lost, and to admit evidence as to its contents.

5. EVIDENCE—PLATS—ADMISSIBILITY.—Where the jury could ascertain from a plat when mutilated the actual delineations of the land in suit, it was not error to refuse to admit the plat without mutilation.

Before MAULDIN, J., Sumter, July, 1915.    Affirmed.

Action by the Atlantic. Coast Line Railroad Company against Mary A. Dawes. Judgment for defendant, and plaintiff appeals.

See, also, ·100 S. C. 258, 84 S. E. 830.

*Messrs. P. A. Willcox, Purdy & Bland, M. Reynolds* and *L. W. McLemore,* for appellant. *Messrs. Purdy & Bland* cite: *Charter:* 11 Stats. 388, 389. *Presence of track:* 67 S. C. 507. *Evidence as to plat:* 79 S. C. 253. *Objection on new trial:* 100 S. C. 483.

*Messrs. L. D. Jennings* and *R. D. Epps,* for respondent, submit: 1. *There was evidence of adverse possession;* 2. *Burden of proving there was no contract was on plaintiff;* 3. *The existence of a contract was a question for the jury;* 4. *Plaintiff must show consent before it can invade yard.*

March 9, 1916.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

This is the second appeal in this case. The case is reported in 100 S. C. 258, 84 S. E. 830. The case was tried the second time before Judge Mauldin and a jury at the July term of Court, 1915, for Sumter county. At the conclusion of the testimony, plaintiff moved for a directed verdict, on the grounds set out in the record, this motion was refused, and the case submitted to the jury, and a verdict returned by them in favor of the defendant. A motion for a new trial was made and refused. After entry of judgment, plaintiff appeals, and makes 15 exceptions, and alleges errors: (1) In refusing to direct a verdict; (2) in putting upon the plaintiff the burden of showing, as an actual fact, that there never was any contract, or contracts, with the owner of the land in question; (3) in permitting the witness, Maj. Lee, to testify as to the contents of the plat made in 1901. The exceptions complain that there was error in holding that there was any evidence of adverse possession to submit to the jury. The facts of the case are different in the case at this trial in some particulars, to what they were at the former trial.

There was some evidence of adverse possession on the part of the defendant, and that she had been holding adversely after giving notice that she was occupying the property and claiming it as her own for a period longer than 10 years, to warrant the jury in finding as they did. A careful analysis of the evidence shows this: The jury could find from the evidence that when the railroad was laid out before building the same and when

it was built that the land in question was embraced in the yard appurtenant to the dwelling house of Mr. Maverick, who owned the premises at that time, and it was incumbent on the plaintiff, by evidence, to show at that time the owner consented that his yard should be invaded, before the plaintiff could establish its right to the strip of land contended for as a part of the right of way. The presumption that arises under the charter of the predecessor of the plaintiff, which gives a certain number of feet from the center of the track over the land which the road may be constructed, does not apply to a case founded upon such a state of facts as exist in this case. For it is specifically provided that there are exceptions to this rule. The exceptions are that no dwelling house, yard, garden, or graveyard shall be invaded without the consent of the owner. Even if the owner allowed the road to be built and gave his consent that land be occupied, there is no presumption that he intended, by this, to allow a right to invade his yard or graveyard and take in and include his dwelling house. The presumption is that he intended to allow what land that was needful outside of his yard, and not to include yard, dwelling house, and cemetery. These are the exceptions. The burden was on the plaintiff to show that the then owner consented that the railroad could invade and acquire what was specifically excepted. Where a charter gives the right to acquire a certain number of feet for the purpose of building a railroad, and the owner allows it to be built on land not included in the yard attached to his dwelling house or cemetery, and gives permission for the road to be built, this raises no presumption, either at that time or later, that the railroad acquired the right to take the part that is specifically provided, they cannot take without the owner's consent for the statute provides specifically "that no dwelling house, yard, garden, or graveyard shall be invaded without the owner's consent." The jury had evidence to support a verdict that

the owner's consent had never been obtained by plaintiff or its predecessors to acquire the dwelling house, yard, or garden of the defendant or of those under whom she claims.

Plaintiff cannot contend that consent can be presumed by lapse of time. The presumption is they acquired what they have been using and all of that part of the yard, garden, and dwelling house that they claim, but in order to get the excepted part made so by statute, they must show their right by agreement, or satisfying evidence of the existence of the right claimed. Until the plaintiff attempted to assert the right claimed by them to the property in dispute and go in the yard, the owner could sit quiet and do nothing. Until plaintiff moved, the defendant was not required to act. There was an inhibition against invading the yard, garden, and dwelling house under the charter, and until an attempt was made to do so, it was not incumbent on the defendant to act.

It is claimed that his Honor was in error in holding that the burden of proving no contract was on the plaintiff. We see no error in this. In the absence of a contract, the presumption is that they acquire what statute provides for subject to the exceptions. If they have a contract, it is in their possession, and whether there is one or not they know better than any one else. Suppose there was a contract in this case between the predecessors of both parties, and it was for less than what the charter provides for and they failed to record it. It would be preposterous to allow the plaintiff to throw it away and claim under the statute and acquire more than it is entitled to. Whether they have a contract or not they know, or should know, or they could soon ascertain. We see no error on the part of his Honor in his ruling as he did in this matter.

As to the exception in permitting Maj. Lee to testify as to the contents of a lost plat, his Honor held that there was sufficient proof as to the plat being lost, and this was a mat-

ter for him largely in his discretion to determine, and certainly did, in some manner, elucidate and clarify the matter in dispute as tending to prove that the railroad had no such right of way as it was claiming, showing that at another time they made a different contention. In that view it was competent. However, in no view of the case do we think it was prejudicial to the defendant.

As to not admitting the plat of Moise without multilation, we see no reversible error in that. The mutilated copy was exhibited in this Court, and from the plat submitted after being mutilated the jury could have inferred what the accurate delineation of the premises and surrounding property was. When it was offered in evidence, there was some confusion. Mr. Reynolds, Mr. Clifton, and Mr. McLemore were all allowed by the Court to give their views about the admissibility of the plat, and Mr. Jennings was strenuously objecting. It does not require much imagination to conclude that all were at times talking at once, and no doubt the Judge and stenographer were naturally confused. It shows the propriety of the rule being enforced that one lawyer at a time examine the witness and make the objections. The Courts will then be conducted with less confusion, and there will be a more orderly trial of the case. We do not see that the action of his Honor was prejudicial to such an extent as to warrant a reversal. He seemed to be under the impression that the attorneys had, after he ruled, arrived at an understanding that was satisfactory to both sides as to what part of the plat was introduced in evidence.

We have not taken up the exceptions *seriatim,* but group them, but we have studied them all.

We find nothing in his Honor's charge or rulings, or nothing in any of the exceptions as would warrant us in reversing the judgment. All exceptions are overruled.

Judgment affirmed.

April 19, 1916.

The following supplemental order was made PER CURIAM:

The impression is made that certain expressions used in the foregoing opinion might be deemed as a reflection upon counsel engaged in this case.

No such reflection is intended, and we do not think the language used bears that construction. The Court was simply laying down a general rule in a concrete form.

We have the highest regard for the counsel engaged in this case.

When this Court intends to reflect on counsel, it will do so in no uncertain terms.